(No. 11299.—Decree affirmed.)
GEORGE A. BRINKMAN, Appellant, *vs.* CHARLES H. BOWLES *et al.* Appellees.

*Opinion filed June 21, 1917—Rehearing denied October 18, 1917.*

1. ELECTIONS—*election contest is regarded as a chancery proceeding.* A proceeding to contest an election is to all intents and purposes a chancery proceeding, and except as otherwise provided by statute is governed by the rules of chancery.

2. PRACTICE—*when section 81 of Practice act does not apply.* Section 81 of the Practice act, authorizing a judge who did not hear the case to sign a bill of exceptions under certain circumstances, does not apply to ordinary chancery suits nor to a proceeding to contest an election, even though its terms include certificates of evidence.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

MICHAEL COSTABILE, (I. T. GREENACRE, and STEDMAN & SOELKE, of counsel,) for appellant.

WINSTON, PAYNE, STRAWN & SHAW, (EDWARD W. EVERETT, E. B. CRESAP, and WILLIAM A. BOWLES, of counsel,) for appellee Charles H. Bowles.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county in a suit brought by the appellant, George A. Brinkman, against Charles H. Bowles and Dennis K. Lindhout, to contest the election of a judge of the city court of Chicago Heights, Cook county, at an election held September 7, 1915. Brinkman was a candidate on what was known as the Home ticket, Bowles on the Judicial Republican ticket and Lindhout on the Republican ticket. The petition alleges that more than 1100 women voted for the candidates for said office at said election, and that a canvass of the returns showed Bowles received a plurality of the total men and women votes and that Brinkman received a plurality

of the men votes. Bowles was declared elected and a commission issued to him. The petition filed by Brinkman to contest the election alleged that women were not legal voters at said election for the office of judge of the city court; that they were illegally allowed to vote and their votes counted; that of the men votes, who were the only legal voters at said election, petitioner received 858 votes, Bowles 823 votes and Lindhout 270 votes in the seven wards of the city; that he received 35 more men votes than Bowles, the next highest candidate, and that he was duly elected to said office of judge of the city court of Chicago Heights.

The city court of Chicago Heights was established pursuant to a vote of said city in 1903. In 1910 the territory known as the seventh ward of said city was annexed to the city, and the petition alleges that the residents of said ward were not legal voters at the election for city judge held in September, 1915, and the votes of residents of said ward should not have been counted. Bowles received a plurality of both the men and women votes in said ward. If the votes of residents of that ward were not counted it would increase the plurality claimed by Brinkman to 76. The petition also alleges that mistakes and errors were made in counting the ballots; that votes were counted for Bowles which were cast for and should have been counted for petitioner; that votes of persons not qualified electors were counted for Bowles, and that many other unlawful and erroneous acts were committed by the judges in counting the ballots and certifying to the returns, and that said returns were incorrect, incomplete, erroneous, and did not show the correct number of votes cast for the respective candidates. The petition alleges that the city council, sitting as a canvassing board, canvassed the returns, declared Bowles elected and a certificate of election was issued to him. The petition alleges Brinkman received more legal votes than either of the other candidates and was lawfully elected judge of the city court of Chicago Heights. Bowles answered the petition and Lindhout was defaulted. At the

hearing the circuit court, following *Franklin* v. *Westfall,*
273 Ill. 402, rejected ballots cast by women and counted
only the ballots cast by men. The court found and decreed
that Bowles received 878 legal votes and Brinkman 876;
that Bowles was elected by two plurality, and the petition
was dismissed. Brinkman excepted and prayed an appeal
to the Supreme Court, which was allowed on condition that
he file a bond in the sum of $500 in thirty days, with surety
to be approved by the court, and he was given sixty days
from the date of the decree, October 28, 1916, "in which
to present, settle and have signed, sealed and filed his cer-
tificate of evidence herein."

Judge Baldwin of the circuit court of Cook county pre-
sided at the hearing and entered the decree on October 28,
1916. On December 19, 1916, Judge Windes, one of the
judges of the circuit court of Cook county, indorsed the cer-
tificate of evidence, "Presented Dec. 19, 1916—Thomas G.
Windes, Judge," and on the same date entered an order or
decree reciting, in substance, that the certificate of evidence
was presented to him with a motion that it be then settled,
signed and sealed by the judge who presided at the hearing,
or in case said judge (Judge Baldwin) was by reason of
disability or absence from the State unable to hear and pass
upon, allow, sign and seal the certificate of evidence, that
any other judge of the court should pass upon, sign and
seal such certificate of evidence, which was made up from
the evidence taken down in stenographic notes and tran-
scribed. The order recites that the certificate of evidence
is now presented to said other judge of the court, who finds
and orders that it is true said judge before whom the cause
was tried "is by reason of inability,—that is, absence from
this State on account of sickness,—unable to hear said mo-
tion and pass upon and allow and sign and seal a certificate
of evidence," and the further consideration of the motion
to settle, sign and seal the certificate of evidence was taken
under advisement by Judge Windes until January 15, 1917.
On January 13, 1917, a decretal order was entered by Judge

Windes, reciting that the parties appeared by their solicitors; that said judge had petitioner's certificate of evidence, which was presented to him December 19, 1916, under consideration since that time, and having considered and approved the same, finds petitioner duly presented the certificate in apt time; that the delay since its presentation has not been due to any acts or omissions or faults of the petitioner; that Judge Baldwin,—the judge who heard the case,—is sick and·unable to act, and that Hon. Thomas G. Windes, "a judge of this court, acts herein." It was therefore ordered by Judge Windes that the certificate of evidence be and it is signed and sealed by said judge and filed "all *nunc pro tunc* as of December 19, A. D. 1916." Bowles in apt time moved this court to strike the certificate of evidence from the record and that the decree of the circuit court be affirmed. This motion was taken with the case and has been argued by counsel on both sides in separate briefs from the briefs on the merits.

We are referred to section 81 of the Practice act for the authority of Judge Windes to sign the certificate of evidence. Said section in part reads as follows: "And in case the judge before whom the cause has heretofore been, or may hereafter be tried, is, by reason of death, sickness, or other disability, unable to hear and pass upon a motion for a new trial in a case at law, and allow and sign a bill of exceptions, certificate of evidence or report of trial, then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such case has been or is taken in stenographic notes, or if the said judge is satisfied by any other means that he can pass upon such motion in a case at law, and allow a true bill of exceptions, certificate of evidence, or report of trial, shall pass upon said motion, in a case at law and allow and sign such bill of exceptions, certificate of evidence or report of trial; and his ruling upon such motion in a case at law, and allowance and signing such bill of exceptions, certificate of evidence, or re-

port of trial, shall be as valid as if such ruling and allowance and signing had been made by the judge before whom such cause was tried; but, in case said judge is satisfied that owing to the fact that he did not preside at the trial, or, for any other cause, he cannot fairly pass upon said motion, in a case at law and allow and sign said bill of exceptions, certificate of evidence, or report of trial, then he may, in his discretion, grant a new trial to the party moving therefor." That act does not apply, except where made applicable by express statement or clear implication, to cases in chancery. The procedure in chancery is governed by "An act to regulate the practice in courts of chancery." (Hurd's Stat. 1916, p. 185; *Moore* v. *Tierney,* 100 Ill. 207.) Section 81 does not purport to apply to suits in chancery, but the provisions we have quoted (which are the provisions relied upon by appellant) are expressly limited to cases at law, and the use of the term "certificate of evidence," in connection with bill of exceptions or report of trial, is not of such significance as to justify a construction that said section was intended to apply to cases in chancery. (*Miller* v. *Anderson,* 269 Ill. 608.) An action to contest an election is to all intents and purposes a chancery proceeding, and, except as otherwise provided, is governed by chancery rules. *Conway* v. *Sexton,* 243 Ill. 59, and cases cited.

In our opinion section 81 of the Practice act cannot be construed as authority for a judge other than the one who heard the case to settle and sign the certificate of evidence in an election contest, and the motion to strike the certificate of evidence is allowed.

If the error alleged as to the legality of votes cast in the seventh ward is raised by the common law record we are of opinion appellant's position is untenable. All other errors assigned depend on the certificate of evidence. That being stricken from the record they cannot be considered.

The decree is affirmed.　　　　　　*Decree affirmed.*