NOTICE
Decision filed 02/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190258

NOS. 5-19-0258, 5-20-0421 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| SANDRA HART, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-MR-611 |
| | ) | |
| THE ILLINOIS STATE POLICE, | ) | Honorable |
| | ) | David W. Dugan, |
| Defendant-Appellant. | ) | Judge, presiding. |

| | | |
|---|---|---|
| KENNETH L. BURGESS SR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 20-MR-608 |
| | ) | |
| THE ILLINOIS STATE POLICE, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Welch and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1     In separate actions filed in the circuit court of Madison County, the plaintiffs, Sandra Hart and Kenneth L. Burgess Sr., filed complaints under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2018)), seeking the circuit court to compel the defendant, Illinois State Police (ISP), to produce documents related to the plaintiffs' applications for firearm owners'

1

identification (FOID) cards pursuant to the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/0.01 *et seq.* (West 2018)). ISP had denied the plaintiffs' FOIA requests for the production of the documents stating that the documents were exempt from disclosure under section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2018)). Because these matters are of the same nature and involve the same issues on appeal, we consolidate these cases as a matter of judicial economy. *Edwards v. Addison Fire Protection District Firefighters' Pension Fund*, 2013 IL App (2d) 121262, ¶ 41 ("Illinois courts favor consolidation of causes where it can be done as a matter of judicial economy.").

¶ 2      On motions for summary judgment, the circuit court held that ISP failed to carry its burden in demonstrating that section 7.5(v) of FOIA authorizes or directs ISP to withhold from the plaintiffs their own personal applications for a FOID card or the ISP's denial letters[1] sent to the plaintiffs. As such, the circuit court entered summary judgments in favor of the plaintiffs and directed ISP to produce the documents along with awarding the plaintiffs' fees and costs.

¶ 3      ISP now appeals the circuit court's judgments arguing that the circuit court erred in finding that the documents requested by the plaintiffs were not exempt from disclosure under section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2018)). ISP further argues in the Burgess case that the documents were exempt from disclosure because ISP was bound by a permanent injunction that prohibited the disclosure of the documents. For the following reasons, we affirm the circuit court's judgments.

---

[1]In the Hart case, the ISP's letter at issue notified Hart of the revocation of her FOID card. In the Burgess case, Burgess's FOIA request sought documents related to "the denial of my application"; however, Burgess's appellee brief indicates the ISP's letter at issue notified Burgess of the revocation of his FOID card. This court will refer to these two letters collectively as the "denial letters."

¶ 4                                  BACKGROUND

¶ 5      On August 31, 2018, Hart made a written request through counsel to ISP pursuant to FOIA for "any and all documents related to Ms. Hart's FOID card, any and all applications for same, and any and all documentation related to any legal disabilities that have or may cause her to be ineligible for a FOID card."[2] On May 6, 2020, Burgess made a written request to ISP pursuant to FOIA for "my file related to my Firearm Owners Identification Card application, as well as specifically, any and all letters to me concerning the denial of my application and the reasons therefore." The plaintiffs' FOIA requests were denied by ISP. The letters[3] issued by ISP denying the plaintiffs' FOIA requests cited and quoted section 7.5(v) of FOIA (*id.*) as the basis for the denials.

¶ 6      On September 14, 2018, Hart filed a complaint in the circuit court, and on June 23, 2020, Burgess filed a complaint in the circuit court. Both complaints were filed pursuant to FOIA and requested that the circuit court compel ISP to produce the requested documents. In the Hart case, ISP filed a motion to dismiss on November 29, 2018, and Hart filed a response to ISP's motion to dismiss and a cross-motion for summary judgment on December 10, 2018. The circuit court conducted a hearing and heard arguments on ISP's motion to dismiss on February 22, 2019. On April 12, 2019, the circuit court entered a written order stating that the case was taken under advisement and directing ISP to file the documents responsive to Hart's FOIA request under seal within 14 days. ISP complied with the circuit court's order on May 17, 2019.

_____

[2]Hart's written FOIA request to ISP also contained a request for "whatever documents you have showing the processing time for FOID appeals." On February 22, 2019, Hart withdrew that portion of her FOIA request and, as such, it was not an issue in the lower court nor is it an issue on appeal.
[3]Electronic correspondence from ISP to Hart's counsel dated September 12, 2018, and correspondence from ISP to Burgess dated May 19, 2020.

3

¶ 7 On May 24, 2019, the circuit court entered a seven-page written order denying ISP's motion to dismiss and granting Hart's motion for summary judgment. The circuit court found that

> "what the legislature intended was to prevent a dissemination to or by third parties of the names and personal information of FOID applicants, and not the release of an applicant's application or the ISP's denial of the applicant's application. A contrary interpretation would create an absurd result."

¶ 8 The circuit court's written order of May 24, 2019, further stated that ISP had "failed to carry its burden in showing that 7.5(v) authorizes or directs ISP to withhold from the plaintiff her application for a FOIA card or its letter of denial." As such, the circuit court directed ISP to produce true and accurate copies of "(1) the plaintiff's Application for Firearm Owner's Identification Card; (2) Letter of May 10, 2010 from [ISP] directed to plaintiff, together with the enclosures[4] thereto" within 30 days. ISP filed a notice appealing the circuit court's May 24, 2019, order on June 21, 2019.[5] On March 5, 2020, the circuit court entered judgment in favor of Hart and against ISP and awarded costs and fees to Hart. The judgment also stated that the circuit court's order of May 24, 2019, directing the disclosure of the documents, remained in effect but was stayed pending the completion of the appellate process.

¶ 9 In the Burgess case, Burgess filed a motion for summary judgment on July 30, 2020. Burgess's motion for summary judgment attached the circuit court's order of May 24, 2019, that granted summary judgment in the Hart case. Burgess's motion for summary judgment stated that he moved for summary judgment on the basis of law as explained in the circuit court's May 24,

---

[4]The only enclosure to ISP's letter dated May 10, 2010, was a self-addressed envelope for the return of Hart's FOID card.

[5]ISP filed a motion to stay and hold in abeyance its appeal pending the supplementation of the circuit court's disposition of the fees and costs. This court granted by ISP's motion on September 19, 2019, and this appeal was reinstated by order of this court on March 23, 2020.

2019, order. ISP filed a cross-motion for summary judgment on August 27, 2020, and an amended cross-motion for summary judgment *instanter* on October 23, 2020. The circuit court held a hearing and issued a written order on October 23, 2020. The circuit court's written order, in relevant part, stated as follows:

> "Argument had on Plaintiff's motion for summary judgment and Defendant's amended cross motion for summary judgment. For the reasons set forth in Judge Dugan's order in Hart v ISP, Plaintiff's motion granted, Defendant's motion denied. Defendant to produce the letter and application within 30 days."

On November 20, 2020, the circuit court entered a written judgment in favor of Burgess and against ISP and awarded cost and fees to Burgess. On December 18, 2020, ISP filed a timely notice of appeal, and as stated above, we have consolidated the Burgess and Hart cases on appeal as a matter of judicial economy.

¶ 10                                    ANALYSIS

¶ 11    Before proceeding with the analysis, we note that ISP filed a suggestion of death in the Hart case on April 5, 2021. The suggestion of death alleged that a person with the same name, birthdate, and birthplace as Hart had died on April 26, 2020. As such, this court placed the Hart case in abeyance pending further order of the court and directed counsel for Hart to file a substitution of party for the decedent pursuant to section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2020)), on or before July 5, 2021. Counsel for Hart did not contest the suggestion of death and no substitution of party was made within the time allotted or at any time during the pendency of this appeal.

¶ 12    The death of the appellee, however, did not render this matter moot since a judgment for damages had been entered and a judgment survives the death of either party. *Wedig v. Kroger*

5

*Grocery & Baking Co.*, 278 Ill. App. 378, 381 (1935). Further, based upon the suggestion of death, this court determined that Hart was deceased at the time of the filing of the appellee's brief. Since no substitution of the party was filed or any authority for a continued attorney-client relationship provided, counsel for Hart had no authority to file the appellee brief in this matter. See *Robison v. Orthotic & Prosthetic Lab, Inc.*, 2015 IL App (5th) 140079, ¶ 12 ("An attorney's employment and his authority are revoked by the death of his client, and an attorney cannot proceed where he does not represent a party to the action."). As such, this court entered an order on September 29, 2021, striking the appellee's brief in the Hart case and directing that the appeal be submitted for decision on the appellant's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal"). Therefore, this court has not considered the appellee's brief filed in the Hart case in its analysis of this consolidated appeal.

¶ 13     We also note that the circuit court's orders limited the documents to be disclosed by ISP to the plaintiffs' applications and ISP's denial letters. Hart's initial FOIA request sought "any and all documents" and Burgess's FOIA request sought "my file." A review of the secured record that was before the circuit court in the Hart case[6] indicates that ISP possessed additional documents related to the revocation of Hart's FOID card. We note that no party challenged the circuit court's limitation of the documents to be disclosed in the lower court's proceedings and that it is not an issue on appeal. As such, our analysis is confined to the circuit court's finding that the plaintiffs' own application for a FOID card and ISP's denial letter were not prohibited from disclosure

---

[6]There is nothing in the record on appeal indicating that ISP was required to provide the circuit court with all documents responsive to Burgess's FOIA request. As such, this court is unaware of whether ISP possessed additional documents related to Burgess's FOIA request.

6

pursuant to section 7.5(v) of FOIA. See *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 22 ("Failure to raise an issue in the trial court generally results in forfeiture of that issue on appeal."); *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1004 (2003) ("Any issue that has not been sufficiently or properly presented to this court for review is waived."). Therefore, we make no determinations or findings regarding whether any additional documents that may be in the possession of ISP related to a FOID application, the denial of a FOID application, or the revocation of a FOIA card are required to be disclosed pursuant to an individual's FOIA request. We will now proceed to the merits of this appeal.

¶ 14    ISP argues on appeal that the circuit court erred in determining that the plaintiffs' applications for a FOID card pursuant to the FOID Card Act and ISP's denial letters were not exempt from disclosure under section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2018)). The interpretation of a statute presents a question of law, subject to *de novo* review. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Under a *de novo* standard of review, this court does not defer to the lower court's judgment or reasoning but performs the same analysis that the lower court would perform. *Arthur v. Catour*, 216 Ill. 2d 72, 78 (2005). We also review a circuit court's grant of summary judgment under a *de novo* standard. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 15    The primary objective of statutory construction is to ascertain and give effect to the legislature's true intent and meaning. *Sandholm*, 2012 IL 111443, ¶ 41. "The language of the statute is the best indication of legislative intent, and our inquiry appropriately begins with the words used by the legislature." *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). Where the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory construction. *Id.* In determining a statute's plain meaning, a court may

7

consider the problems sought to be remedied, the reason for the law, the purposes to be achieved, and the consequences of construing a statute one way or another in determining a statute's plain meaning. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 16    Further, all provisions of a statute should be viewed as a whole (*Brucker*, 227 Ill. 2d at 514), and all words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Sandholm*, 2012 IL 111443, ¶ 41. Statutes are to be construed so that no word, clause, or sentence is rendered meaningless or superfluous. *Gutman*, 2011 IL 110338, ¶ 12.

¶ 17    Section 1 of FOIA provides the public policy and legislative intent of FOIA and states, in relevant part, as follows:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. ***
>
> The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." 5 ILCS 140/1 (West 2018).

¶ 18    Section 1.2 of FOIA further provides that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." *Id.* § 1.2. Therefore, in conducting

8

our analysis, we must be mindful that it is the public policy of Illinois, and that there exists a statutory mandate, that public records are presumed to be open and accessible. Section 1.2 also places the burden of proving by clear and convincing evidence that a record is exempt from disclosure on the public body. *Id.* In line with section 1.2, the statutory exemptions contained in section 7 of FOIA " 'are to be read narrowly.' " *Mancini Law Group, P.C. v. Schaumburg Police Department*, 2021 IL 126675, ¶ 16 (quoting *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997)).

¶ 19    In this matter, ISP argues that the records requested by the plaintiffs are exempt under section 7.5(v) of FOIA, which states as follows:

> "§ 7.5. Statutory exemptions. To the extent provided for by the statutes referenced below, the following shall be exempt from inspection and copying:
>
> * * *
>
> (v) Names and information of people who have applied for or received Firearm Owner's Identification Cards under the Firearm Owners Identification Card Act or applied for or received a concealed carry license under the Firearm Concealed Carry Act, unless otherwise authorized by the Firearm Concealed Carry Act; and databases under the Firearm Concealed Carry Act, records of the Concealed Carry Licensing Review Board under the Firearm Concealed Carry Act, and law enforcement agency objections under the Firearm Concealed Carry Act."
>
> 5 ILCS 140/7.5(v) (West 2018).

¶ 20    The circuit court found that a narrow reading of the specific language of section 7.5(v) strongly suggested that

9

"it does not encompass for purposes of exemption a FOID application that is requested by the applicant herself, nor communications authored by the ISP and previously served on the requesting applicant. The legislature employed the words 'names' and 'people' in plural forms. This would suggest that the legislature addressed the possibility that absent such an exemption, the names of applicants and their personal information could be widely misused ***."

¶ 21 ISP argues that the plain language of section 7.5(v) exempts from disclosure "*all* names and information of people who have applied for or received FOID cards under the FOID Act" (emphasis in original) and that the circuit court improperly turned to legislative history to add an exception to the FOID Card Act not found in its plain terms. We disagree. As the circuit court noted, the legislature used the plural terms "names" and "people" and not the singular "name" or "person." " 'Person' " is defined in section 2(b) of FOIA as "any individual, corporation, partnership, firm, organization or association, acting individually or as a group." 5 ILCS 140/2(b) (West 2018). As such, the legislature could have used the singular term "person" in section 7.5(v), which would have incorporated by definition an individual or group but instead elected to use the plural term "people" indicating more than one individual. We also note that the legislature did not include a provision that the plural use of a term includes the singular that is familiar in other statutory schemes. See, *e.g.*, 750 ILCS 50/1(G) (West 2020) (the Adoption Act stating, "The singular includes the plural and the plural includes the singular and the 'male' includes the 'female', as the context of this Act may require."); 215 ILCS 5/2(m) (West 2020) (the Illinois Insurance Code stating, "Personal pronouns include all genders, the singular includes the plural and the plural includes the singular."); 620 ILCS 5/24 (West 2020) (the Illinois Aeronautics Act

10

stating, "For the purposes of this Act the singular shall include the plural, and the plural the singular.").

¶ 22    FOIA does use the singular term "person" in other sections. See, *e.g.*, 5 ILCS 140/3(a) (West 2018) ("a public body may not grant to any person or entity"); *id.* § 3.1(a) ("the public body may require the person"); *id.* § 5 ("electronic data processing may be obtained in a form comprehensible to persons lacking knowledge of computer language"). However, section 7.5(v) uses the plural term "people," and this court may not construe any word of a statute as superfluous or meaningless. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 116 (1993). To state that "people" indicates a single individual would render the word "people" meaningless. Therefore, we find that the word "people" by its plain meaning necessitates more than a single individual.

¶ 23    We must also interpret section 7.5(v) in light of other relevant provisions of the statute. *Sandholm*, 2012 IL 111443, ¶ 41.

¶ 24    Section 7(1)(c) of FOIA states:

> "Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, *unless the disclosure is consented to in writing by the individual subjects of the information*."
> (Emphasis added.) 5 ILCS 140/7(1)(c) (West 2018).

¶ 25    The above provision indicates that the legislature, in prohibiting the release of personal information, provided an exception wherein an individual could consent in writing to the release of their own information. Section 7.5(v) only prohibits the *names and information of people* who have applied for or received FOID cards and contains no prohibition of the release of any specific document, such as an application or denial letter. The only prohibition on the release of specific

11

records contained in section 7.5(v) relates to the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2018)). As such, section 7.5(v) prohibits the release of personal information of individuals who have applied for or received FOID cards, and section 7(1)(c) indicates that an individual can consent in writing to the release of their own personal information. In this matter, the plaintiffs were requesting their own applications and denial letters, and their written FOIA requests indicated a consent in writing by the subject of the information. Therefore, when interpreting section 7.5(v) in light of section 7(1)(c), we find that the plaintiffs' applications and denial letters were not prohibited from disclosure where the plaintiffs consented to the release of their own information.

¶ 26 The circuit court also found the following to be consistent with the plain language of section 7.5(v):

"The disclosure of the names and personal information, such as addresses, of FOID card holders discloses by implication those who are not card holders and presumably not gun owners. The potential for placing those individuals at risk from crime simply by reason of their choice not to own a gun was a concern raised by Illinois State Senator Dillard. He envisioned that disclosure of the names and addresses of FOID card holders would 'give burglars a map to systematically burglarize our neighborhoods and our farms.' [Citation.] Regardless of the validity of that concern, it nevertheless illustrates that what the legislature intended was to prevent a dissemination to or by third parties of the names and personal information of FOID applicants, and the not the release of an applicant's application or the ISP's denial of the applicant's application. A contrary interpretation would create an absurd result."

12

¶ 27    "[A] court presumes that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation." *People v. Casler*, 2020 IL 125117, ¶ 24. Here, Burgess states that "it makes absolute sense for the government to keep private names and addresses of FOID card holders" but argues that he already knows his own name, address, and that his FOID card was revoked. Burgess argues that he "just wants to know *why*" (emphasis in original) in order to seek an appeal of the revocation. We agree.

¶ 28    The plaintiffs here are simply seeking another copy of their own information, which they have consented to be released, and are not seeking the "names and information of people." Moreover, attempting to appeal an ISP's decision without first knowing the basis for that decision would cause an inconvenience to both the individual and ISP since it would be impossible for an individual to deny or demonstrate the removal of a liability that was the basis for the ISP's decision. Thus, we conclude that interpreting section 7.5(v) to prohibit the release of the plaintiffs' own applications and denial letters would create an absurd result.

¶ 29    ISP also argues that "there is no way for a public body to verify whether the individual who submits a written FOIA request is actually the person whose information is being sought" and thus disclosure of the information would defeat the General Assembly's concern that individuals might access FOID information for unlawful purposes. We find this argument unpersuasive as the individual's written FOIA request, by necessity to identify the application and denial letter sought, should provide ISP with sufficient information to demonstrate that the requester was seeking his/her own information. If not, section 7(c) of FOIA requires a written consent from the individual for the release of his/her own information, and if the individual's FOIA request is insufficient to demonstrate a written consent for his/her own information, additional verifying information could be required before the release of the information.

13

¶ 30    Finally, ISP argues in the Burgess case that the documents related to Burgess's FOID card application were exempt from disclosure because ISP was bound by a permanent injunction that prohibited their disclosure. On December 5, 2011, the Honorable Chief Judge Michael E. Brandt of the Tenth Judicial Circuit, Peoria County, Illinois, entered an agreed order for permanent injunction in the matter of Illinois State Rifle Ass'n v. Illinois State Police, No. 11-CH-151 (Cir. Ct. Peoria County). The agreed order for permanent injunction contained the following provisions:

"6. The Freedom of Information Act (5 ILCS 140/1 *et seq.*), and as amended, exempts certain information from disclosure, inspection, or copying. Pursuant to the Freedom of Information Act, the State Police, its officers, employees, and agents, shall be prohibited from releasing, in response to a request made under the Freedom of Information Act, any personally identifying information—as defined *infra* in ¶ 7—containing any of the following:

a. Records identifying, directly or indirectly, any person who has applied for a FOID card, who has been issued or denied a FOID card, or whose FOID card has expired or been revoked;

* * *

7. As used in this Order, the term 'personally identifying information' means information submitted to the State Police related to a FOID card application or the FTIP program that identifies or describes a person, including but not limited to an individual's name, street address, telephone number, electronic mail address, date of birth, physical description, photograph, medical or mental health information, Social Security number, driver's license number, state identification number, FOID card number, or other similarly unique identifying information."

14

ISP raised this issue in its amended motion for summary judgment and argued the issue at the circuit court's hearing on October 23, 2020. The circuit court, however, made no finding regarding the permanent injunction and granted summary judgment based on the ruling in the Hart case, which did not address the issue.

¶ 31     We acknowledge that a public body does not improperly withhold records pursuant to FOIA when the public body is barred from disclosing them under an existing court order. See *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 66 (holding that "a lawful court order takes precedence over the disclosure requirements of FOIA"). However, the permanent injunction specifically states that the injunction is pursuant to FOIA, and for the reasons stated above, we have found that FOIA does not prohibit the release of the plaintiffs' applications and denial letters. Consequently, it is for these same reasons, we find that the permanent injunction does not prohibit the release of the plaintiffs' application and denial letters. We further note that an individual's request for his/her own information does not identify, either directly or indirectly, a person that is not ascertained in the request.

¶ 32     Based on the above, we find that section 7.5(v) of FOIA does not prohibit the release of the plaintiffs' application or denial letters since the word "people" by its plain meaning necessitates more than a single individual and section 7(1)(c) provides for the release of personal information with the written consent of the individual that is the subject of the information. We further find that the permanent injunction entered in the matter of Illinois State Rifle Ass'n v. Illinois State Police does not prohibit the release of the plaintiffs' application or denial letters for the same reasoning since the permanent injunction was entered pursuant to FOIA.

¶ 33                                         CONCLUSION

¶ 34     For the foregoing reasons, we affirm the judgments of the circuit court.

15

¶ 35    Affirmed.

**No. 5-19-0258**

| | |
|---|---|
| **Cite as:** | *Hart v. Illinois State Police*, 2022 IL App (5th) 190258 |
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, Nos. 18-MR-611, 20-MR-608; the Hon. David W. Dugan and the Hon. Christopher P. Threlkeld, Judges, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | Thomas G. Maag, of Maag Law Firm, LLC, of Wood River, for appellees. |